20-2173 New River Electrical Corporation v. Occupational Safety and Health Review Commission and counsel for the petitioner, Mr. Prietel. Did I pronounce that right? That's correct. Yes, you pronounced it correct. All right, sir. Go ahead. A lot of people get it wrong, but you got it right. You may proceed. Yes. May it please the court, Keith Prietel for the petitioner, New River Electrical Corporation, and we are here on review of a decision and order by the Occupational Safety and Health Review Commission. And I know the courts have read the briefs and gone through the facts underlying the citations that were issued. So I'd like to start with each citation item and go through each item and the arguments and the analysis used by the item one, where the judge took what was a singular citation under 1926-961b-4 and carved it up into two separate ostensible violations by taking the each crucial and independently comply with this section precursor of the citation or of the regulation and applying the facts in this case. And what the judge did, the administrative law judge did was said, well, there's a site under citation number two that relates to 1926-961. So if we find a violation of that independent citation item number two, that necessarily means there's a citation of one item number one under the independently comply clause. And then the judge also cited a regulation that had to do with protective grounding in the electrical environment. And it was a regulation that was not cited against New River Electrical Corporation in any form or fashion, 1926-952c-7. And said, well, even if citation two can't be the supporting basis for citation one, then this independent regulation for grounding can serve as the predicate for that each crucial independently comply with this section clause. A couple problems that we have briefed the court and that we have with the analysis, at least with respect to that clause employed by the administrative law. First is neither party, no party, neither the secretary, frankly, neither New River argued that that each crucial independently comply with the section clause could bolster or predicate a OSHA citation. I've taken the unusual move of putting in the record. Okay. But before we would get, before we get to all the details of the citations, do you have an argument under Wilson and Sons about the burden of proof here and whether it was incorrectly placed on your client as opposed to the government with regard to the employee, unpreventable employee misconduct offense? Yeah, I think we do judge. I think in your circuit where knowledge can't be imputed, cannot be imputed through the mere supervisors or foremen that are on the site and you have to show in the fourth circuit foreseeability, then the burden is on the government to, I guess, disavow the factors of employee misconduct rather than us having to prove the factors of employee misconduct. Well, did the ALJ or the commissioner here properly place the burden on your client? It was placed on us. The burden was placed on us, Judge. Traditionally in employee misconduct, it is an affirmative defense in OSHA proceedings. And the judge did place the burden on us when it should have been placed on the government. Irrespective of that, there's factors in the employee misconduct that I'll get to later that I think may make that burden of proof issue and the shifting of the burden of proof to New River. It may bring it into more foresight for the court. Yeah, because of course, if the burden of proof was improperly placed on you, then shouldn't we send it back? That's grounds for reversal, Judge, but there may be grounds for really just entering an order in favor of New River rather than sending it back. So, I'm going to return back. I don't want to get off track, but I'm with Vivian up that regulation. Mr. Price, I can ask you about that because you may well have a point about this improper division of the liability under that subsection. But if we, I guess it really wouldn't matter, would it, if the ALJ's finding that there was no system operator in charge of the lines, that separate finding would be sufficient to uphold the violation, right? So, I think maybe you need to focus on that. Yes, Judge. So, you're right. There's a separate independent requirement and the predicate for having separate tags and coordinating de-energizing and energizing under the regulation requires that no system operator be in charge of the lines or equipment. And during the course of the hearing, every witness, including the government's witness, including the compliance safety and health officer, including the two former foremen of New River, testified that AEP was the system operator. What the administrative law judge did is it delved into the preamble to the regulation and said, well, if you go into the preamble of regulation, then the system operator in charge of the lines equipment has to be in charge of all the lines and equipment. But there's a finding of fact at the very beginning of the administrative law judge's opinion where he said that AEP de-energized the lines and equipment through DDC, the control dispatch arm of AEP. That's true. The whole outage was begun and the de-energizing had to go through AEP's DDC unit. And that's a finding of fact. Well, even if that's true, but weren't the crews re-energizing the lines throughout the day? So, I mean, weren't they actually in charge? So, the judge said they were re-energizing and de-energizing, and that's wrong. They did re-energize at one point during the day. Yes, they did. When they had the south riser loop and the south riser poles completed, they energized the south riser. But what do you do with that, judge, where you have one aspect where AEP is the de-energizer of the lines and equipment, and the crew is the re-energizer of the lines and equipment? And that really goes to what we've argued in our brief, is this regulation, and this is the first time someone's tackling this regulation. No one's been on it before. No one's really looked at it before, and there's no case law on it before. Did it give fair notice to New River? And when you're using a decision to announce how a safety standard is supposed to operate, that bears on the adequacy of the notice provided. Can I ask you, if we're talking about the specific standard in B-4-2, right, it turns on this definition for existence of a system operator, and you take issue with the fact that the ALJ looked to the preamble in order to understand and apply that definition in this case. But before he got there, he looked at the definition itself, right, and that definition's not very helpful. Qualified person designated to operate the system works parts. It's kind of circular. The context of B-4-2 doesn't provide any additional help. And then you get to this preamble, which is the ALJ articulated, is precisely the scenario that existed that day in the subdivision, where you have multiple crews. You have the underground and the riser crews doing different things, and you don't want them making assumptions about what the other crews have de-energized or not. So why was it improper for him to look and apply that preamble, given the ambiguity of the definition of itself? Well, two reasons, Judge, because even under the preamble, it says the system operator is the person who's de-energizing or re-energizing all of the equipment. And that's not the factual case here. The de-energization in the morning occurred through AEP. It did not occur through anything these crews did or could have done. So it's a little different than when the judge just block quoted that same section of the preamble and said, this is exactly what they were doing, de-energizing and re-energizing. First of all, they weren't de-energizing, and the only thing they did is re-energize when they got done with the risers related to the south loop. I would agree with you, though, Judge, that the standard on its face is not very helpful in its circular definition of what a system operator is. I mean, it is circular, and everybody, like I said, testified, everybody, even the government's witness said, yep, AEP is the system operator here. Their experts said they're the system operator. I'd like to get on to the knowledge element, Judge Thacker, which I think kind of goes into the misconduct that you raised and the burden of proof as well. The first thing, obviously, the administrative law judge did was that it can be imputed through the mere presence of the foreman and the actors. And this court's ocean electric decision, of course, had rejected it. In fact, the judge noted that the Fourth Circuit takes a different view of how you establish knowledge under the Fourth Circuit's body of case law. But then he went out and found, of course, the ability and really did it through what he called time constraints, that the crews were under time constraints and because they were under time constraints here and were rushed to do this job that we should have known. There are like eight facts that are nowhere mentioned in the administrative law judge's opinion that run directly counter to any suggestion that these crews were under any rush to complete the project that day or any other day. And when you look at something under the arbitrary and capricious review standpoint, you have to at least acknowledge evidence that runs counter to your finding of fact. And I think the judge had a problem with this because the two witnesses the government used in his case were both, we know who they were. I mean, they were serial liars. They were the people who fabricated the scene after it was all over with. So he couldn't have a credibility dispute between those two. But the facts were that Zach Howard, one of the foremen, was told two weeks prior to this particular incident that he could use all the overtime he needed to complete the project. Don't worry about any kind of overtime. If you think you need to overtime, use all the overtime you want. On the morning of the day of the event, Mr. Howard told Superintendent Barnhart that if he could have additional help and Barnhart told him, look, call me if it looks like you're not going to make your outing. And that's in the trial transcript 206. And that's nowhere in the judge's opinion. Nowhere mentioned in the judge's opinion. Later on in the day, Superintendent Barnhart initiated that conversation. So instead of putting the burden on Zach Howard to call him, he called him and asked if he needed extra help. And he said he didn't need anyone. That's an undisputed fact. That's the trial transcript or the joint appended transcript 391. And then throughout the day, Foreman Howard contacted Superintendent Barnhart to call in the bad transformers that they were finding. And never once did he ask for extra help, as was the directive at the beginning of the day. Mr. Pryor, can I ask, before we run out of time here, that that was part of the ALJ's basis for finding or imputing knowledge. But I thought the other significant part of the ALJ's opinion was a concern that or the finding that the company's plan was inadequate. And then he listed a number of reasons why that may have been the case, including the fact that you had three managers on the job who failed in some degree or another to do what was supposed to have been done, suggesting that that showed some unanimity of noncompliant conduct that suggests in turn that lacks enforcement of safety rules. And he went on. So I'd like you to talk about that aspect of the ALJ's ruling. Yes, I would take the, they said the fact that foremen were involved in this is a strong suggestion of a lax safety program. They couldn't carry it much further because of the law on the circuit that almost would be imputing knowledge. It'd be the same thing. But the two other factors that the judge mentioned, that it's very hard to defend and it's almost impossible to defend when it says, hey, you guys don't have enough electrical hazards here that I could count. I mean, that may be true, but that should be a good thing. That should be in our favor that we don't, these are an international brotherhood of electrical workers, apprentice trained journeyman workers in the field. They should not have a lot of electrical related instances of misconduct or happenstance. But the judge kind of used that against us and said, well, I'm looking through your disciplines here. It doesn't look like you have a whole lot of write-ups about that. Really, it should be in our favor, not against us. And then the judge said that, you know, one time a month surprise audits of five hours was not of a sufficient frequency and that most of the safety disciplines occurred after an incident of property damage. Well, I think in our reply brief, I'm over my time, I understand it, but in our reply brief, Judge Diaz, we did note that his counting was certainly off. When you go through the 200 and something disciplines that were entered into the record, there were a number that had nothing to do with property damage or an incident occurring and they were preemptive. All right, Mr. Pratt, you've got some time reserved for rebuttal, so I'll let you respond on the back end. Ms. Chong, we'll hear from you. Can it please the court, Jen Chong representing the Secretary of Labor. This court should affirm the commission's final order because there is substantial evidence supporting the ALJ's decision, finding that New River failed to, one, coordinate de-energizing and energizing, two, de-energize and tag, three, de-energize and place grounds, and four, demonstrate unpreventable employee misconduct. And as New River found in its own incident report, production out-balanced safety due to time constraints. There was a lack of leadership, planning, and communication. As a result, New River's employee... Ms. Chong, under L.R. Wilson and Sons, whose burden is it on the unpreventable employee misconduct defense, isn't it the government's burden to prove that, and it must be disproved by the Secretary of Labor in his or her case-in-chief, according to the Wilson case? According to the Wilson case and the Fourth Circuit decisions on employer knowledge, it is the Secretary's burden to prove that a foreman or a supervisor's misconduct was foreseeable. It seemed to me throughout the opinion that the burden of proof was misplaced onto appellant here rather than the government. Can you disabuse me of that notion? Yes. So on page 20 of the ALJ's decision, the second full paragraph, the ALJ wrote, quote, in addition... What's the JA page? Oh, sorry. Okay. JA104. Thank you. 1-0-4. And where is it you want me to look? Second paragraph. Okay. He wrote, in addition... Even if the court applied Fourth Circuit precedent to this issue, the court finds that the violations by respondents foreman were foreseeable, and so the ALJ properly applied this circuit's case law regarding employer knowledge. I mean, the ALJ properly acknowledged, I guess, the case law, but there are times it seems that the burden was put on the appellant rather than the government. As the ALJ found... But, you know, opposing counsel does... Appellant's counsel doesn't really seem to agree with me on that either, so that'll be his argument to make, I guess. Your Honor, on that point, as the ALJ found the foreman's misconduct was foreseeable based on Mu River's very inadequate safety program, and as well as the time constraints that the foreman were under that day due to the change in the scope of work. Significantly, you know, as the ALJ wrote, the adequacy of a safety program is dependent on a variety of factors, including the amount of job training received by supervisors, employee competence and experience, safety records, practicality of supervision, and degree of dangerous and hazardous work. And here, the work that was being done was highly dangerous, and also one of the foremen, one of the three supervisors on site was just vaguely familiar with the grounding policy that they had, and he did not know of Mu River's tagging policy despite being a supervisor. Even though Mu River's own policy required an approved grounding plan, the foreman failed to create that before the start of their work that day, and there were no new JSAs or JHAs despite the change in the scope of the work. Also, Mu River's own incident report on page caused the schedule outage deadline to be exceeded. This created a production lead safety behavior, thus resulting in a series of poor decisions. And so, your honors, Mu River itself found that there were timing issues, and that because of those issues, these crews were making poor decisions. Miss Chan, but even if we accept all of that, you know, how does that establish sort of the company's knowledge? If we assume that this is a one-off incident, and one of the arguments Mr. Prytel makes is that the department in this case, the commission took the company's data of its enforcement of safety rules over the years, it was a limited data set, saw that there was a paucity of punishments for preemptive violations, and somehow equated that to the fact that the company was lax in enforcing its rules. But I suppose, I mean, an equally reasonable observation or analysis of that data is that the company was doing a good job, and therefore, there wasn't a need for a great number of disciplinary proceedings. It seems, I mean, why isn't that right? Well, if you just look at the incident itself, there were three different supervisors that failed to create a grounding plan as was required by Rivers' own safety rules, and also failed to place tags or to ground the transformer. And so, there are three supervisors that are violating New Rivers' rules. And so, I think it's a very difficult argument to these type of violations that these violations were not happening. And as the ALJ found, these safety audits were inadequate. He wrote that, given the gravity of potential harm, the violations by multiple supervisors here, the change in the scope of work, and that most of the safety violations found by respondent were identified after property damage, the court considers a safety inspection of only once per month inadequate. Can I follow up on that? You made the argument that, sorry, you made the argument that, you know, you had three supervisors involved and they clearly knew better. But the fact is that they, in fact, did know how to do this because they covered it up by engaging in the very kind of safety precautions that they should have taken on the front end, which suggests to me that the company did train these folks properly. They just decided to go off on their own. Why should we hold the company accountable for that? Your Honor, as the ALJ found, yes, the company did have safety rules. And yes, they did communicate these safety rules through training. However, they failed to take adequate steps to discover violations and to effectively enforce their safety rules. And because of those failures, the court can conclude that this safety program at New River was inadequate. That's because there are safety rules. Ms. Chong, let me ask you a second. I think one of the things you would point to, and I don't want to put words in your mouth, is, for instance, that Mr. Barnhart, I think he was the safety manager, testified that, you know, we disciplined folks for failing to ground, but in the 238 pages of records that were provided, there's no corroboration for that, is there? Yes. I mean, even though Superintendent Barnhart had said that, you know, there were disciplinary actions, he couldn't recall a single incident where an employee had failed to ground or tag, despite working for New River for 15 years. And he did not, even though he was a foreman and a superintendent, actually discipline an employee for failing to follow these rules. Ms. Chong, can I get you back to the first part of Mr. Pryor's argument regarding the first violation that he argues is simply an improper, it's improper because the commission in this case divided the violations into two separate ones without adequate notice of the precise violation, simply by relying on this catch-all provision in that section of the regulations. So what's your response to that? That seems, it does seem a bit odd the way that was handled. Your Honor, as I think you mentioned yourself, even under that rationale of the the second half of that provision, this court can affirm that or uphold the judge's finding that New River failed to coordinate the energizing and energizing. Are you conceding then that his argument is well taken with respect to the first part of that violation? No, Your Honor, because the ALJ found that if you look to page 14 of his decision, JA098, it's just a very short quote, but the ALJ found that, quote, the violation cited in item one is clear and this was based on the crew's failure to ground or verify that grounds were in place. And so the ALJ made or found this finding based on the failure to comply with item one. So he didn't have to go to the other cited provisions to reach his conclusion. I'm sorry, I can't help myself. I'm going to go back to the burden of proof thing. I know you directed me to JA104 as to, you know, where the ALJ said, oh, if they applied fourth circuit law, but that didn't have to do with the defense of employee misconduct. That comes up much later in the ALJ's opinion. And I think you agreed with me that the employee misconduct must be disproved by the Secretary of Labor in his or her case in chief, right? It's the burden of proof of the Secretary of Labor to disprove, I guess, the employee misconduct, according to Wilson and Sons. Okay. And then what I was talking about, if you look at starting at JA117, which is where the ALJ actually addresses the defense of employee misconduct, throughout that section is where there are discussions about the appellant here, petitioner, having to meet the burden, as opposed to the government. So, yes, Your Honor, it is the Secretary's position that while we have to show that the foreman's misconduct was foreseeable in order to prove employer knowledge, it is the, it is New River's burden to prove affirmative defense of employee misconduct. Okay, it's New River's. Okay, well, I thought earlier you agreed with me when I read the Wilson and Sons opinion, or part of it says, unpreventable employee misconduct must be disproved by the Secretary of Labor in his or her case in chief. Sorry, Your Honor, could you repeat just that part? Okay. In Wilson and Sons, a four circuit case, it says, unpreventable employee misconduct must be disproved by the Secretary of Labor in his or her case in chief. So, that sounds like the burden of proof, although oddly, because it says disproved, was on the government. But in the ALJ's opinion, starting at JA 117, there are numerous references to the burden being on the respondent. I mean, I don't want to take up a lot of your time if you're not, that's a convoluted question, I guess, if you're not prepared for that. Your Honor, I can provide a supplemental brief on that issue if you'd like me to. Go ahead with your argument and I'll try to make myself more clear in a minute. Your argument, go back to what you were arguing. You can forget about that question from me for now. I'll try to make myself more clear in a minute. Well, I guess just to kind of follow up, and I don't want to beat a dead horse here, but the provision, the paragraph that you cited earlier, Ms. Chong, clearly acknowledges the four circuit law on the fact that you can't impute knowledge to an employer simply by virtue of the misconduct. You've got to show something more. And it appears that this affirmative but ultimately, as best I can tell, and of course, Mr. Prieto can respond, but it appears at least the first place that the ALJ did properly allocate the burden, at least on the front end, but do you agree with that? I agree that the ALJ properly applied four circuit precedent to the employer knowledge element of the Secretary's prima facie case. As in that, you know, a foreman's misconduct must be foreseeable for that misconduct to be intruded to the employer, right? That's established fourth circuit law, and the ALJ properly did that as I pointed to in that paragraph. Right, and that's a JA-104 that you pointed to before, correct? Yes, I believe so. And as Judge Diaz said, maybe those two concepts bleed over to each other. And so I have acknowledged, yes, that the Secretary has that burden to prove foreseeability in order for a foreman's knowledge to be imputed. Okay, Ms. Chong, do you have anything further? Do you have anything else? I don't mean to cut you off, but... Your Honors, if there are no additional questions, the Secretary just asks this court to uphold the ALJ's findings based on substantial evidence. Thank you, Ms. Chong. Mr. Prieto, you've got some time for rebuttal. Go ahead. You're on mute, sir. We can't hear you. I'm sorry, Judge. Just briefly, Judge Becker, just so there's no confusion, I am in agreement with the burden of proof on employee misconduct, and you preempted me by finding it at JA-117 to 118, where clearly the judge had said that the burden is on the respondent with respect to that over safety, and that's in New River's report where it did an analysis, root cause of what happened here. The production over safety wasn't anything imposed on the employees by the company, though. If these employees wanted to get off that work site and get home, you know, in a timely fashion rather than spend the 16 hours that they had as IBEW journeymen to work that site. That's not on New River. That's nothing we compelled them to do. So that statement in the production safety really was these employees wanted to get off the site, not that the company imposed on them to stay on the site. Judge Cullen, you brought out the fact that, you know, there was this discussion from Mr. Barnhart and the questioning by the ALJ about, have you ever caught somebody not grounding? Have you ever disciplined somebody for not There's a kind of limitation there because he wasn't in a position to discipline for the entire time that he was like a foreman and then he moved to superintendent. There really came a point in time when he was in the position to discipline. But again, I would expect his crews not to have disciplines for something as material as not grounding when you're doing electrical work. That's like electrical 101 and these are IBEW journeymen. And there was testimony, Judge I know this because I tried this case. I remember distinctly their expert, Dennis Gossie, and I can't locate it. I was trying to pour through this in the record, but I can't locate it right now. But I know if you look at the cross-examination of Dennis Gossie, he conceded that within his report, he acknowledged there were three instances where employees of the IBEW were disciplined for not grounding. So there were scans, and that's in our favor, I think, scan instances of disciplined employees for not grounding. And don't forget when you're talking about the work environment at New River, it's a unionized environment. It's a lot different to discipline an employee effectively in a unionized environment when they're protected by that collective bargaining agreement than it is outside of it. That's not to say you don't do it, but it's a lot more difficult than it is when someone's employed at will. Mr. Prezel, thank you for that. I'm going to go back and take a look at Mr. Gossie's testimony. Do you recall of those three incidents, did they involve kind of proactive inspection, or was this post-accident, post-incident? Do you know? I can't remember, Judge. I don't want to misspeak here. I can't remember. That's okay. We can take a look at that. I do remember the disciplines were severe for a unionized environment. They were suspension. These people were put on parole for a period of time for not grounding, but I can't remember whether they were preempted or as a result of an incident that occurred. I guess the one thing I haven't brought up and that I'd like to bring up in the argument is the whole way the administrative law judge limited what he was going to look at in terms of an effective safety program by saying, well, I'm going to only look at the electrical, the energetic, electrical. Anything else is irrelevant in terms of the proactiveness we had in our safety program for a variety of things that are in our reply brief that have nothing to do with necessarily the electrical end of it. There's a lot more driving whatever it may be. There's a decision by the review commission called Dana containment cited in our brief where it's the opposite of what I'm arguing here, where when the government wants to cite an employer for a non-effective safety program, it says we have to look at things outside of what the particulars were to the citation. We're able to do that. I guess my question is, why isn't the reverse true? Why isn't the reverse of having an effective safety program? We also look at all the things that the company did proactively and preemptively that occurred outside of mere electrical hazards or electrical events that occurred. It should be going both ways if that's the way you're going to analyze it. We've argued that in our brief that Dana container should apply here. You should have looked at everything, not just, hey, there was only 13 or 14 or 15 electrical related incidents. Just so I understand that argument, are you saying that the company was ready, willing, and able to present that evidence, but it was foreclosed by the ALJ? It's in the record, Judge. We weren't ready, willing, and able to do it. It's already in the record. The disciplines are in the record. He just refused to analyze them or look at them in the ambit of deciding whether we had a quote effective safety program, but they're in there. We weren't ready, willing. They were there. They were stipulated to as part of a pre-hearing stipulation that we had with the government. They're in the record. I think the only other matter I want to mention, there's a case cited by the administrative law judge for the notion that twice a week safety audits in this Thomas Industry Codings case that he cited, the review commission had rejected that as being sufficient. I went back and read that case, and I read it and read it because I don't want to disparage any administrative law judge, but that in no shape or form did that in Thomas Industry Codings case hold that, say that. I looked at the pinpoint site at star symbol 10 from the slip opinion citation, and he called it a review commission decision. It's an administrative law judge's decision. It wasn't from the review commission. It wasn't binding at all. What happened in that case, that particular employer had three tie-off fatalities where their employees were not wearing lanyards while working over a bridge project. It not once changed its rules or practices or inspections during the course of those three fatalities. For that reason, that administrative law judge says you don't have an effective safety program, but it had nothing to do with the number of inspections or whether twice a week was sufficient or insufficient. Unless the court has any further questions, we thank the court for its time and consideration of the case. My colleagues have any additional questions? No. All right. Thank you very much, counsel, for your fine arguments this afternoon. The case is taken under advisement. We appreciate your being with us. As you may have heard from the earlier argument, it's our tradition to come down from the bench and personally greet you in this COVID world. We can't do that, but thank you nonetheless for being with us this afternoon. Be safe and be well.
judges: Albert Diaz, Stephanie D. Thacker, Thomas T. Cullen